ORIGINAL

DGR
95350-103696

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

FILED-CLERK
U.S. DISTRICT COURT
99 DEC 15 PM 2:33
TEXAS-EASTERN
BY_____ Moore

**LARRY BROCK**
4340 E. Lucas Street
Beaumont, Texas 77708

and

**KATHY BROCK**
4340 E. Lucas Street
Beaumont, Texas 77708

and

**EVERETT BROCK ENT., INC.**
4340 E. Lucas Street
Beaumont, Texas 77708

and

**BETTY CLARKE**
2228 N. 10th Street
McAllen, Texas 78572

and

**BLAIR CLARKE**
2228 N. 10th Street
McAllen, Texas 78572

and

**DARLENE GENTRY**
4701 - H South Padre Island Drive
Corpus Christi, Texas 78411

and

**WILLIAM GENTRY**
4701 - H South Padre Island Drive
Corpus Christi, Texas 78411

CASE NO.:   599CV274

and                                                  )
                                                     )
**KATHY GORTNEY**                                    )
**13614 Co. Rd. 123 W.**                             )
**Odessa, Texas 79765**                              )
                                                     )
and                                                  )
                                                     )
**GUY GORTNEY**                                      )
**13614 Co. Rd. 123 W.**                             )
**Odessa, Texas 79765**                              )
                                                     )
                                                     )
and                                                  )
                                                     )
**ALICE HIGGINS**                                    )
**3408 82ND Street**                            )
**Lubbock, Texas 79423**                             )
                                                     )
and                                                  )
                                                     )
**WILLIAM HIGGINS**                                  )
**3408 82ND Street**                            )
**Lubbock, Texas 79423**                             )
                                                     )
and                                                  )
                                                     )
                                                     )
**MIKE HIGGINS ENT., INC.**                          )
**3901 77th Street**                            )
**Lubbock, Texas 79603**                             )
                                                     )
and                                                  )
                                                     )
**DUKE HOOD**                                        )
**824 Westwood**                                     )
**Abilene, Texas 79603**                             )
                                                     )
and                                                  )
                                                     )
**MICHAEL COLLINS**                                  )
**824 Westwood**                                     )
**Abilene, Texas 79603**                             )
                                                     )

and                                          )
                                             )
**C & H STORES, INC.**                       )
**824 Westwood**                             )
**Abilene, Texas 79603**                     )
                                             )
and                                          )
                                             )
**NANCY HORKEY**                             )
**1111 Caballoway**                          )
**Granbury, Texas 76048**                    )
                                             )
and                                          )
                                             )
**LUCHE, INC.**                              )
**1111 Caballoway**                          )
**Granbury, Texas 76048**                    )
                                             )
and                                          )
                                             )
**LINDA HULSEY**                             )
**5427 31st Street**                         )
**Lubbock, Texas 79407**                     )
                                             )
and                                          )
                                             )
**HARRY HULSEY**                             )
**5427 31st Street**                         )
**Lubbock, Texas 79407**                     )
                                             )
and                                          )
                                             )
**MARLENE JOYCE**                            )
**4026 Maplewood Drive**                     )
**Sulphur, Louisiana**                       )
                                             )
and                                          )
                                             )
**TOMMY JOYCE**                              )
**4026 Maplewood Drive**                     )
**Sulphur, Louisiana**                       )
                                             )
and                                          )

R.V. RENTALS, Inc.                           )
4026 Maplewood Drive                         )
Sulphur, Louisiana                           )
                                             )
and                                          )
                                             )
PATSY MERRILL                                )
110 Carroll Street                           )
Shreveport, Louisiana 71105                  )
                                             )
and                                          )
                                             )
JERRY MERRILL                                )
110 Carroll Street                           )
Shreveport, Louisiana 71105                  )
                                             )
                                             )
and                                          )
                                             )
FLAVIO OLIVAREZ                              )
5805 Stallion Ridge                          )
College Station, Texas 77845                 )
                                             )
and                                          )
                                             )
MADHU PATEL                                  )
5 Highcrest Place                            )
Texarkana, Texas 75503                       )
                                             )
and                                          )
                                             )
KATHY PLUNKETT                               )
1520 N. Trenton Street                       )
Ruston, Louisiana 71270                      )
                                             )
and                                          )
                                             )
CHARLES PLUNKETT                             )
1520 N. Trenton Street                       )
Ruston, Louisiana 71270                      )
                                             )
and                                          )
                                             )

4

**NEIL PONTHIE**                            )
**4726 Jackson Street**                     )
**Alexandria, Louisiana 71303**            )
                                            )
**and**                                     )
                                            )
                                            )
**PAR GROUP, INC.**                         )
**4726 Jackson Street**                     )
**Alexandria, Louisiana 71303**            )
                                            )
**and**                                     )
                                            )
**BILLY DAN ROLLING**                       )
**6010 A SW 34th Street**                   )
**Amarillo, Texas 79109**                   )
                                            )
**and**                                     )
                                            )
**SUSAN SCHNEIDER**                         )
**3006 69th Street**                        )
**Lubbock, Texas 79413**                    )
                                            )
**and**                                     )
                                            )
**ED SCHNEIDER**                            )
**3006 69th Street**                        )
**Lubbock, Texas 79413**                    )
                                            )
**and**                                     )
                                            )
**MOHINDER AHLUWALIA**                      )
**3720 Hardy Street**                       )
**Suite 16**                                )
**Hattiesburg, Mississippi 39402**         )
                                            )
**and**                                     )
                                            )
**DABIR AHLUWALIA**                         )
**3720 Hardy Street**                       )
**Suite 16**                                )
**Hattiesburg, Mississippi 39402**         )
                                            )

5

and )
    )
**DAVID C. STURGEON** )
**1303 Sherwood Way** )
**San Angelo, Texas 76904** )
    )
and )
    )
**PAULA J. WOLSLAGER** )
**3524 Knickerbocker** )
**San Angelo, Texas 76904** )
    )
and )
    )
**SAN ANGELO ICE CREAM** )
   **& YOGURT  INC.** )
**3524 Knickerbocker** )
**San Angelo, Texas 76904** )
    )
and )
    )
**THELDA TAYLOR** )
**2618 N. Grandview** )
**Odessa, Texas 79761** )
    )
and )
    )
**GLEN TAYLOR** )
**2618 N. Grandview** )
**Odessa, Texas 79761** )
    )
and )
    )
**TAYLOR HOBBS** )
**P. O. Box 23067** )
**Waco, Texas 76702** )
    )
     **Plaintiffs** )
    )
vs. )

6

| | |
|---|---|
| **BASKIN-ROBBINS USA CO.** | ) |
| **31 Baskin-Robbins Place** | ) |
| **Glendale, California 91201** | ) |
| | ) |
| **and** | ) |
| | ) |
| **BASKIN-ROBBINS INCORPORATED** | ) |
| **31 Baskin-Robbins Place** | ) |
| **Glendale, California 91201** | ) |
| | ) |
|      **Defendants** | ) |

## COMPLAINT

Now come plaintiffs, by their attorneys listed below, and state the following upon personal

knowledge as to themselves and their own acts and upon information and belief as to all other

matters.

## NATURE OF THIS ACTION

1.  Plaintiffs are franchisees of Baskin-Robbins franchises.

2.  The plaintiffs bring this action seeking both remedies at law and equitable relief.

3.  For the purposes of this action, plaintiffs comprise, either singularly, severally, or wholly

    "Groups," these Groups being described and comprised of the following:

    (i)"**Group I Plaintiffs**": This Group is comprised of all the plaintiffs to this action
    with franchises located in Texas, those being Kathy Brock, Larry Brock, Betty
    Clarke, Blair Clarke, Darlene Gentry, William Gentry,  Kathy Gortney, Guy
    Gortney, Alice Higgins, William Higgins, Mike Higgins Enterprises, Inc., Duke
    Hood, Michael Collins, C & H Stores, Inc., Nancy Horkey, Luche, Inc., Flavio
    Olivarez, Linda Hulsey, Harry Hulsey, Madhu Patel, Billy Dan Rolling, Susan
    Schneider, Ed Schneider, David C. Sturgeon, Paula J. Wolslager, San Angelo Ice
    Cream and Yogurt, Inc., Thelda Taylor, Glen Taylor, and Taylor Hobbs. The Group
    I plaintiffs are consumers under the Texas Deceptive Trade Practices and Consumer
    Protection Act (DTPA), Chapter 17 of the Tex. Bus. & Com. Code.  Among other
    relief, Group I Plaintiffs, as consumers under the DTPA, seek relief due to the
    defendants' unconscionable and knowing conduct involving the sale of ice cream
    products and the intentional withholding of information regarding the same. Group

I Plaintiffs also seek injunctive relief to cease the unfair pricing practices of the defendants and to prevent the defendants' enforcement of unlawful non-compete covenants based on the defendants' notice to all Group I Plaintiffs that their franchise locations will not be renewed at the end of their franchise agreements.

(ii)**"Group II Plaintiffs"**: This Group is comprised of plaintiffs seeking damages at law, those being Kathy Brock, Larry Brock, Everett Brock Enterprises, Inc., Betty Clarke, Blair Clarke, Darlene Gentry, William Gentry, Kathy Gortney, Guy Gortney, Alice Higgins, William Higgins, Mike Higgins Enterprises, Inc., Duke Hood, Michael Collins, C & H Stores, Inc., Nancy Horkey, Luche, Inc., Linda Hulsey, Harry Hulsey, Patsy Merrill, Jerry Merrill, Flavio Olivarez, Madham Patel, Kathy Plunkett, Charles Plunkett, Susan Schneider, Ed Schneider, Mohinder Ahluwalia, Dabir Ahluwalia, David C. Sturgeon, Paula J. Wolslager, San Angelo Ice Cream & Yogurt, Inc., and Taylor Hobbs, who purchased or renewed "single brand" Baskin-Robbins franchise locations, i.e. selling only Baskin-Robbins brand products, during the time of January 1, 1995 through May 8, 1997 and/or other plaintiffs who invested funds or resources in the remodeling, upgrading, and improving of their single brand franchise locations or equipment for the same during this time period and after.

(iii)**"Group III Plaintiffs"**: This Group is comprised of plaintiffs seeking damages at law whose contractual relations were interfered with as of result of the actions of the defendants. The plaintiff in this Group are Nancy Horkey, Patsy Merrill, Jerry Merrill, Kathy Plunkett, and Charles Plunkett.

(iv) **"Group IV Plaintiffs"**: This Group is comprised of all the plaintiffs to this action with franchises located in Louisiana, those being Marlene Joyce, Tommy Joyce, R.V. Rentals, Inc., Patsy Merrill, Jerry Merrill, Kathy Plunkett, Charles Plunkett, Neil Ponthie, and Par Group, Inc. The Group IV Plaintiffs are consumers under either the Louisiana Unfair Trade and Consumer Protection Statute or the . Among other relief, Group IV Plaintiffs, as consumers, seek relief under the Louisiana Unfair Trade and Consumer Protection Statute due to the defendants' unfair and deceptive conduct involving the sale of ice cream products and related products and services and the intentional withholding of information regarding the same. Group IV Plaintiffs also seek injunctive relief to cease the unfair pricing practices of the defendants and to prevent the defendants' enforcement of unlawful non-compete covenants based on the defendants' notice to all Group IV Plaintiffs that their franchise locations will not be renewed at the end of their franchise agreements.

(v) **"Group V Plaintiffs"**: This Group is comprised of all the plaintiffs to this action with franchises located in Mississippi, those being Mohinder Ahluwalia and Dabir Mohinder. The Group V Plaintiffs seek relief for breach of fiduciary duty under Mississippi law. Group V Plaintiffs also seek injunctive relief to cease the unfair

pricing practices of the defendants and to prevent the defendants' enforcement of unlawful non-compete covenants based on the defendants' notice to all Group V Plaintiffs that their franchise locations will not be renewed at the end of their franchise agreements.

## JURISDICTION

4.     Jurisdiction is founded on diversity of citizenship and amount, 28 U.S.C. Sec. 1332, as plaintiffs are citizens of the States of Texas, Louisiana, and Mississippi, defendants are citizens of the States of California and Delaware, and the matter in controversy exceeds, exclusive of interest and costs, the sum of Seventy-five Thousand Dollars.   This court also has federal question jurisdiction pursuant to 28 U.S.C. Sec. 1333 and 15 U.S.C. Sec. 13(a).

## THE PARTIES

5.     The plaintiffs are individuals who, jointly or individually, own or operate "single brand" Baskin-Robbins franchise locations throughout the States of Texas, Louisiana, and Mississippi, including the region in which this Court is located. "Single brand" franchise locations are franchise locations which sell only Baskin-Robbins brand products.

6.     BR USA is a corporation organized under the laws of the State of California with its principal place of business at 31 Baskin-Robbins Place, Glendale, CA 91201.

7.     BR Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business at 31 Baskin-Robbins Place, Glendale, CA 91201.

8.     BR USA is a franchisor and the manufacturer and distributor of ice cream, frozen yogurt and other frozen desert products.  It distributes its products in at least forty (40) of the United States.

9.     BR USA is a wholly owned subsidiary of BR Inc.

10.     BR Inc. grants area franchises for the manufacture and sale of its products and has granted the right to BR USA to franchise retail stores. In its fiscal year ending August 31, 1996, BR Inc., and its subsidiaries, had total revenues of $270.3 million of which $216.3 million, representing 80%, was derived from the sale of ice cream and ice cream products.

11.     Dunkin' Donuts Incorporated ("Dunkin") is a corporation organized under the laws of the State of Delaware and is also a wholly owned subsidiary of BR Inc. Dunkin is a franchised coffee, doughnut and baked goods store chain. BR USA refers to Dunkin as its "sister" company.

12.     Allied Domeq Retailing USA is an unincorporated division which shares personnel of BR USA, Dunkin' Donuts and Togo's Eateries, Inc. which are indirect, wholly- owned subsidiaries of Allied Domeq PLC, a publicly-traded United Kingdom Company.

## FACTUAL BACKGROUND

13.     The franchise agreements between all Plaintiffs and Baskin-Robbins involve the sale of goods in interstate commerce.

14.     The franchise agreements between all Plaintiffs and Baskin-Robbins include non-competition provisions.

15.     At all times material hereto, the Group I Plaintiffs owned and operated single brand Baskin-Robbins Franchise locations throughout the State of Texas, as consumers under the DTPA of Texas, purchasing ice cream products and related services and products during the time up to and around October 26, 1999 and October 27, 1999.

16.     At all times material hereto, the Group IV Plaintiffs owned and operated single brand Baskin-Robbins Franchise locations throughout the State of Louisiana, as consumers under the

Louisiana Unfair Trade and Consumer Protection Statute, purchasing ice cream products and related services and products during the time up to and around October 26, 1999 and October 27, 1999, and were owed a fiduciary duty until October 26 and October 27, 1999.

17.    The Group I, Group IV and Group V Plaintiffs owned and operated the franchise locations referred in the preceding paragraphs as a result of entering into franchise agreements with BR USA and/or BR Inc.

18.    On or around October 26, 1999 and October 27, 1999 BR USA and/or BR Inc. representatives, including Connie Burkhart, gave written and verbal notice to the Group I, Group IV and Group V Plaintiffs that BR USA and/or BR Inc. would not be renewing the franchise agreements of the Group I, Group IV and Group V Plaintiffs on the basis that the franchise locations of the Group I , Group IV and Group V Plaintiffs were located in "non-strategic markets."

19.    While BR USA and/or BR Inc. did not advise the Group I , Group IV and Group V Plaintiffs of the non-renewal described in the preceding paragraph until or around October 26, 1999 and/or October 27, 1999, representatives of the defendants, including Connie Burkhart, knowingly withheld this information from the Group I , Group IV and Group V Plaintiffs for a time period of at least several months prior to disclosing the information regarding the non-renewal of franchise locations, this information being material to the Group I , Group IV and Group V Plaintiffs' decision to purchase any product, as consumers, and otherwise, from BR USA.

20.    In furtherance of withholding this material information from the Group I, Group IV and Group V Plaintiffs, representatives of BR USA and/or BR Inc., including Connie Burkhart, executed a confidentiality agreement which prohibited any disclosure to the Group I, Group IV and Group V Plaintiffs, and others, prior to the date of or around October 26, 1999 and/or October 27,

1999, of the material fact and information that their franchise locations would not be renewed due to the defendants' determination that the Group I, Group IV and Group V Plaintiffs' franchise locations were located in a "non-strategic area."

21.     Upon information and belief, representatives of BR USA and BR Inc., including Connie Burkhart, executed the confidentiality agreement referred to in the preceding paragraph, in Las Vegas, Nevada,  several months prior to disclosing to the Group I, Group IV and Group V Plaintiffs that their franchise locations would not be renewed by BR USA.

22.     During the time period between the execution of the confidentiality agreement referred in the preceding paragraphs, and the date the defendants' representative gave notice of the non-renewal of the franchise locations, as described in the preceding paragraphs,  BR USA and/or BR Inc. continued the unconscionable practices of selling ice cream products and other related services and products to the Group I, Group IV and Group V Plaintiffs, and securing other material rights and remuneration from the Group I , Group IV and Group V Plaintiffs, absent their knowledge of the defendants' decision regarding the non-renewal of their franchise locations, and to the detriment of the Group I , Group IV and Group V Plaintiffs individually.

23.     Upon information and belief, it is further alleged that the representatives of BR USA and BR Inc. who were involved in the withholding of the information regarding non-renewal of the Group I Plaintiffs, more specifically Connie Burkhart, were so affected by this unconscionable action and conduct that the defendants provided counseling and management to assist the same after the disclosure of the defendants' decision to not renew the franchise locations of the Group I , Group IV and Group V Plaintiffs.

24.     At all times material hereto, BR USA offered three basic types of franchise units that could be acquired by prospective franchisees.  First, BR USA sold franchises for "Basic Retail Units" which were units located near other retail operations such as in a strip center or shopping mall.  Next, BR USA offered "Drive-thru Retail Units" which were stand-alone facilities with drive-thru capabilities.  Lastly, BR USA offered "Combo Retail Units" which were retail stores offering a combination of food products such as ice cream combined with donuts and/or sub sandwiches and/or other food products.  These units were known as "combo brand" stores.  "Single brand" stores are all stores which are not combo brand stores and do not offer a combination of food products such as ice cream combined with donuts and/or sub sandwiches and/or other food products.

25.     Sometime during the time period of January 1, 1995 and May 8, 1997, the named defendants, acting in conjunction with Dunkin, concluded that the combo brand store, selling other food products in addition to frozen deserts, was a superior business model, as compared to single brand stores.  In furtherance of this conclusion the defendants issued and developed "The Chicago Plan", *a copy of which is attached as Exhibit 1,* which contained facts and information, which had they disclosed, would have been material to the Group II Plaintiffs' decision to execute franchise agreements for and invest in the operation of single brand stores.

26.     The Chicago Plan was a strategic plan, for the time period of 1997 to 2000 which evidences and is based upon the defendants' conclusion that the single brand store was obsolete and not viable, thereby requiring the overwhelming development of the combo store, while phasing out the single brand stores. Among the elements contained in The Chicago Plan, which was part of a national strategy, was the following:

13

- "Only corporately sign combo deals or potentially dual branded locations." *Exhibit 1 at page 42.*

- For the time period 1998 to 2000 develop combo stores at rate approximately twelve (12) combo stores for one (1) single brand store. *Exhibit 1 at page 31.*

- Close all "C" locations at the end of the franchise term. *Exhibit 1 at page 33.*

27.    In furtherance of the defendants' strategy for phasing out the single brand franchise locations, the defendants engaged in a concerted effort altering the rating systems of franchise stores, whereby store ratings would drop from a higher rating category to a "C" rating, as described in the aforementioned "Chicago Plan."

28.    During or around the time period of January 1, 1995 through May 8, 1997, although the defendants had concluded that the combo brand store was the superior business model, and one which offered the greatest probability for profitable operations, defendants continued to sell franchises for single brand stores in Texas and across the United States.  In effectuating these sales, whether on an initial purchase of a franchise location or the renewal of a existing franchise location, to the Group II Plaintiffs, the defendants and their directors, officers, executives and other personnel withheld, omitted and misrepresented material facts to the Group II Plaintiffs prior to the decision of the Group II Plaintiffs to execute franchise agreements for the operation of single brand stores.

29.    The central devices used by the defendants in the withholding, omitting, and misrepresenting of information material to the decision of the Group II Plaintiffs' to execute franchise agreements for the operation of single brand stores were BR USA's Uniform Franchise Offering Circulars (UFOC), such as the one dated November 29, 1995 which is attached as *Exhibit B.* This device, or one similar, was distributed to each of the Group II plaintiffs and contained no material variation in the withholdings, omissions, and misrepresentations of information material

14

to the Group II Plaintiffs' decisions to execute franchise agreements for the operation of single brand stores.

30.     The UFOCs dated November 29, 1995, or similar thereto were justifiably relied upon by the Group II Plaintiffs. These UFOCs withheld, omitted, and misrepresented information material to the Group II Plaintiffs' decision to execute franchise agreements with the defendants for the operation of single brand franchise stores, most notably, the defendants conclusion that single brand stores were outmoded and obsolescent.

31.     The withholding, omission, and misrepresentation of certain material facts by the defendants was justifiably relied upon by the Group II Plaintiffs and fraudulently induced the same into investing capital and other resources into the operation of the single brand stores after the execution of franchise agreements for the operation of the single brand stores.

32.     In effectuating sales of the single brand franchise locations the defendants withheld, omitted, or misrepresented facts which were material to the Group II Plaintiffs' decision to execute franchise agreements for the operation of single brand franchise stores and their decision to invest capital and other resources into the operation of single brand stores. Though the defendants were under a duty to disclose material facts relevant to the Group II Plaintiffs' decision to execute franchise agreements for the operation of single brand stores, they did not, those material facts including, but not limited to, the following:

a) That the directors, officers, executives and other personnel of the defendants concluded that the combo brand store was to be developed at an overwhelming pace, as compared to the single brand store;

b) That the directors, officers, executives and other personnel of the defendants concluded that the single brand store was obsolete and not viable;

c) That the directors, officers, executives and other personnel of the defendants concluded that combo brand stores were more profitable than the single brand stores.

33.     Since at least July, 1996, BR USA and Dunkin have shared a common field organization and field staff and the two brother-sister corporations, BR USA and Dunkin, have shared marketing and strategic plans and other resources with one another.

34.     Although organized as separate corporations, BR USA and Dunkin share and co-mingle assets and resources.

35.     BR Inc. and BR USA shared the same officers, executives, and personnel, during the time period of January 1, 1995 through May 8, 1997, including, but not limited to, Mr. Kenton C. Woods and Maria Flores. Mr. Woods was Vice-President of Finance for BR Inc. and BR USA and Ms. Flores was Vice President of Human Resources for BR USA and BR Inc.

36.     At some point between January 1, 1995 and May 8, 1997 the Group II Plaintiffs entered into agreements for the initial purchase or renewal of single brand franchise locations after having justifiably relied on the information contained in the defendants' UFOCs.

37.     Subsequent to May 9, 1997 the defendants disseminated a UFOC dated May 9, 1997, *a copy of which is attached hereto as Exhibit 3*. It was in the May 9, 1997 UFOC that the defendants finally disclosed the extent of development of the combo store and the advantages of the same, this information being withheld from the Group II Plaintiffs prior to the distribution of the May 9, 1997 UFOC by the defendants.

38.     On or around October 26, 1999 and October 27, 1999 the representatives of the defendants, including Connie Burkhart, disclosed to the Group II Plaintiffs, having owned and operated their single brand stores and having invested large amounts of capital and resources in the

16

same, that their single brand stores franchise agreements would not be renewed.

39.     Group III Plaintiffs entered into agreements with various buyers for the sale of their respective existing single brand franchise locations.

40.     At some point in time after the agreements referenced in the preceding paragraph were reached, representatives of the defendants contacted the contracted buyers or the single brand franchise locations, advising the same that the franchises were located in non-strategic markets and/or were "C" locations and/or Defendants took action which was so adverse to Group III Plaintiffs that it became impossible to sell their respective existing single brand franchise locations.

41.     Subsequent to the defendants' conduct described in the preceding paragraph, the contracted buyers refused to complete the purchase of the Group III Plaintiffs' single brand franchise locations.

42.     On November 18, 1999, Baskin-Robbins sent certain franchisees a letter, *a copy of which is attached as Exhibit 4*, stating their franchises were located in markets designated as "non-strategic"and extending two offers to franchisees: Franchise Royalty Conversion Offer *a copy of which is attached as Exhibit 5,* and the Limited Franchise Royalty Conversion Offer, *a copy of which is attached as Exhibit 6.*

43.     Both the Franchise Royalty Conversion Offer and the Limited Franchise Royalty Conversion Offer included a "GENERAL RELEASE" under which the franchisee was required to release and forever discharge

> Baskin-Robbins Incorporated and Baskin-Robbins USA Co., their successors, assigns, subsidiaries, and affiliated corporations ... and all officers, directors, agents, employees and representatives past and present, of Baskin-Robbins or any one of them, of and from any and all claims, demands, causes of action, suits, debts, dues, duties, sums of money, accounts, reckonings, covenants, contracts, agreements,

promises, damages, judgments, extents, executions, liabilities, and obligations, both contingent and fixed, known and unknown, of every kind and nature whatsoever in law or equity, or otherwise, under local, state or federal law, against Baskin-Robbins which you or your predecessor in interest ever had, now have, or which they, their heirs, executors, administrators, or assigns hereafter can, shall, or may have, for, upon, or by reason of any matter, cause or thing whatsoever, to the date of this amendment.

*Exhibit 5 at page 5 and Exhibit 6 at page 4.*

44.     Both the Franchise Royalty Conversion Offer and the Limited Franchise Royalty Conversion Offer included a wholesale price reduction on ice cream products to those franchisees who selected one of the offers. *Exhibit 5 at page 3 and Exhibit 6 at page 2.*

45.     This wholesale price reduction was not available to franchisees who opted not to accept either offer. *Exhibit 4 at ¶ 3.*

46.     This stated purpose of the wholesale price reduction is "intended to provide the consumer with lower retail prices, an improved experience and a more relevant product offering" and to provide the franchisee with "better unit economics, lower wholesale prices, and increased traffic driven by lower prices and an improved store experience." *See Exhibit 7 at page 1.*

47.     The Limited Franchise Royalty Conversion Offer contained a "DEIDENTIFICATION" provision whereby Baskin-Bobbins agreed to waive its right to enforce the non-competition provision of the franchise agreements, permitting the franchisee to continue to operate an ice cream or yogurt store at the same location after termination of the franchise agreement provided the franchisee did not use any Baskin-Robbins products, trade names, or trademarks. *Exhibit 6 at page 3.* The Franchise Royalty Conversion Offer permitted renewal of franchises with "C" site or trade area ratings provided the franchisee relocated its store in accordance with standards set forth in the Offer. *Exhibit 6 at page 4.*

48.     The offers by Baskin-Robbins threaten to enforce the non-competition provision against any franchisee operating a store in a non-strategic area who fails to accept either the Franchise Royalty Conversion Offer or the Limited Franchise Royalty Conversion Offer.

49.     Although the aforementioned execution or failure to execute the Franchise Royalty Conversion Offer or the Limited Franchise Royalty Conversion Offer proposed material changes to the existing franchise agreements of the plaintiffs, the defendants, in further evidence of their unconscionable conduct towards the plaintiffs, failed to comply with the requirements of 16 CFR 436, which mandates the dissemination of a UFOC to an existing franchisee if materials changes are proposed to an existing franchise agreement.

## COUNT ONE

### Deceptive and Unconscionable Trade Practices in
### Violation of Texas Deceptive Trade Practices and Consumer
### Protection Act (DTPA) - Group I Plaintiffs

50.     Plaintiffs reallege and incorporate herein by reference each and every previous allegation of this Complaint, as if fully rewritten.

51.     The defendants withheld material information regarding their intent not to renew the franchises of the Group I Plaintiffs, which information caused, and was intended to cause, the Group I Plaintiffs to enter into transactions for the purchase of defendants' products and services which the Group I Plaintiffs would not have entered into had they known the Defendants did not intend to renew their franchises.

52.     The defendants' conduct in withholding material information regarding their intent not to renew the franchises of the Group I Plaintiffs from the Group I Plaintiffs was unconscionable in that the defendants took advantage of the Group I Plaintiffs' lack of knowledge to their detriment.

19

53.     The defendants withheld material information regarding their intent not to renew the franchises of the Group I Plaintiffs from the Group I Plaintiffs despite their awareness of the falsity, deception, and unfairness inherent in their conduct.

54.     By reason of the defendants' conduct as aforesaid, the Group I Plaintiffs each suffered economic damages and mental anguish in an amount to be proved at trial, but in excess of $75,000.00.

## COUNT TWO

### Unfair or deceptive acts or practices in violation of the Louisiana Unfair Trade Practices and Consumer Protection Act - Group IV Plaintiffs

55.     Plaintiffs reallege and incorporate herein by reference each and every previous allegation of this Complaint, as if fully rewritten.

56.     The defendants withheld material information regarding their intent to renew the franchises of the Group IV Plaintiffs despite their awareness of the falsity, deception, and unfairness inherent in their conduct.

57.     The defendants' withholding of material information regarding their intent not to renew the franchises of the Group IV Plaintiffs constituted unfair and deceptive conduct of trade or commerce within the meaning of the Louisiana Unfair Trade Practices and Consumer Protection Act.

58.     By reason of the conduct as aforesaid, the Group IV Plaintiffs each suffered actual damages in an amount in excess of $75,000.00.

## COUNT THREE

### Fraud - Group I, Group IV & Group V Plaintiffs

59.     Plaintiffs reallege and incorporate herein by reference each and every previous allegation of this Complaint, as if fully rewritten herein.

60.     By using means and instrumentalities of interstate commerce, the defendants knowingly and/or recklessly (a) employed devices, schemes, and artifices to defraud the Group I, Group IV and Group V Plaintiffs in connection with their purchase of ice cream products prior to or around October 26, 1999 and October 27, 1999, even though the defendants were under a duty to disclose the material information that the franchise locations of the Group I, Group IV and Group V Plaintiffs would not be renewed, as described with particularity in the preceding Paragraphs of this Complaint.

61.     The defendants were under a duty to disclose these facts because of their materiality to the Group I, Group IV and Group V Plaintiffs' decision to purchase ice cream products and related products and services from the defendants by reason of the defendants' superior knowledge, skill, bargaining power and course of dealing among the parties.

62.     The defendants' failure to disclose, and their omissions, withholdings, and misrepresentations of the material facts previously referenced and described in the preceding paragraphs, while under a duty to do so, in light of the circumstances, constituted a fraud or deceit upon the Group I, Group IV and Group V Plaintiffs.

63.     The Group I, Group IV and Group V Plaintiffs justifiably relied on the information available to them to their detriment at the time they purchased ice cream products and related products and services from the defendants, as described in the preceding paragraphs.

64.     By reason of the conduct of the defendants, the Group I , Group IV and Group V Plaintiffs have each suffered losses in the operation of their single brand stores and been injured by reason of the conduct of defendants in an amount to be proved at trial, but in excess of $75,000.

## COUNT FOUR

### Fraud - Group II Plaintiffs

65.     Plaintiffs reallege and incorporate herein by reference each and every previous allegation of this Complaint, as if fully rewritten herein.

65.     By using means and instrumentalities of interstate commerce, the defendants knowingly and/or recklessly (a) employed devices, schemes, and artifices to defraud, including but not limited to the Uniform Franchise Offering Circular dated November 29, 1995, or a UFOC substantially identical thereto, and (b) omitted to state material facts, when under a duty to do so, as described with particularity in preceding Paragraphs of this Complaint.

66.     The defendants were under a duty to disclose these material facts because of defendants legal duty to promulgate a UFOC and their materiality to the Group II Plaintiffs' decision to execute franchise agreements for the operation of single brand franchise stores and their subsequent investments of capital and other resources in the single brand stores.

67.     The defendants' failure to disclose, and their omissions, withholdings, and misrepresentations of the material facts previously referenced and described, while under a duty to do so, in light of the circumstances, constituted a fraud or deceit upon the Group II Plaintiffs.

68.     The Group II Plaintiffs justifiably relied on the information provided to them by the defendants, including but not limited to the November 29, 1995 UFOC , or a UFOC substantially identical thereto, in the course of purchasing, renewing, or operating  single brand franchises from

the defendants and investing capital and other resources in the single brand stores.

69.     By reason of the conduct of the defendants, the Group II Plaintiffs have each suffered

the entire loss of their investment in their single brand stores and have suffered a great reduction in

profitability and the potential loss of their entire investment and have been injured by reason of the

conduct of defendants in an amount to be proved at trial, but in excess of $75,000.

## COUNT FIVE

### Fraud in the Inducement - Group II Plaintiffs

70.     Plaintiffs reallege and incorporate herein by reference each and every previous

allegation of this Complaint, as if fully rewritten herein.

71.     Defendants willfully and fraudulently induced the Group II Plaintiffs to enter into

franchise agreements by (1) the making of the misrepresentations and omissions heretofore set forth

when under a duty not to mislead, and (2) materially misstating the viability and prospects for the

profitability of operating single brand stores.

72.     The Group II Plaintiffs justifiably relied on the information provided to them by the

defendants, including but not limited to the November 29, 1995 UFOC, or substantially identical

thereto, in the course of being fraudulently induced into executing agreements for the purchase and

renewal of single brand franchise stores from the defendants during the time period of January 1,

1995 through May 8, 1997.

73.     By reason of the conduct of the defendants, the Group II Plaintiffs have suffered the

loss of their investment and/or have suffered a great reduction in profitability and the potential loss

of their entire investment and have been injured by reason of the conduct of defendants in an amount

to be proved at trial, but in excess of $75,000.

## COUNT SIX

### Rescission - Plaintiffs Group II

74.   Plaintiffs reallege and incorporate herein by reference each and every previous allegation of this Complaint, as if fully rewritten herein.

75.   By reason of the defendants' fraudulent and deceptive actions as alleged, and the defendants' fraudulent inducement of the Group II Plaintiffs  into executing the above referenced single brand franchise agreements, the Group II Plaintiffs are entitled to rescission and the return of funds paid to defendants and expended as their initial investment in their retail stores and the additional capital and resources that the Group II Plaintiffs invested in their single brand franchise stores after the execution of the above referenced franchise agreements.

## COUNT SEVEN

### Intentional Interference With Contract -Group III Plaintiffs

76.   Plaintiffs reallege and incorporate herein by reference each and every previous allegation of this Complaint, as if fully rewritten herein.

77.   By reason of the defendants' conduct in intentionally interfering with the contract for the sale of their franchises, the Group III Plaintiffs each suffered damages in an amount to be proved at trial but in excess of $75,000.00.

## COUNT EIGHT

### Breach of Implied Covenant of Good Faith and Fair Dealing - Group I,  Group IV & Group V Plaintiffs

78.   Plaintiffs reallege and incorporate herein by reference each and every previous allegation of this Complaint, as if fully rewritten.

79.     The defendants' withholding of material information regarding their intent not to renew the franchises of the Group I and Group IV Plaintiffs from the Group I and Group IV Plaintiffs while continuing to sell to sell ice cream and related products and services to the Group I and Group IV Plaintiffs and securing other remuneration from the Group I and Group IV Plaintiffs constituted a breach of the implied covenant of good faith and fair dealings implied in all contracts.

80.     By reason of the defendants' breach of the implied covenant of good faith and fair dealing, the Group I and Group IV Plaintiffs each suffered damages in an amount to be proved at trial but in excess of $75,000.00.

## COUNT NINE

**For Injunction Against Enforcement of the Non-Compete Provisions of the Baskin-Robbins Franchise Agreement - Group I, Group IV, and Group V Plaintiffs**

81.     Plaintiffs reallege and incorporate herein by reference each and every previous allegation of this Complaint, as if fully rewritten.

82.     Having designated the areas in which the Group I , Group IV and Group V Plaintiff's franchises are located as "non-strategic," the defendants will not be conducting business in those areas in the future.

83.     Having designated the areas in which the Group I,  Group IV and Group V Plaintiff's franchises are located as "non-strategic," the Group I,  Group IV and Group V Plaintiffs will not be competing with the defendants by continuing to operate ice cream stores in the same location after expiration of their franchise agreements.

84.     The defendants' designation of the areas in which the Group I, Group IV and Group V Plaintiffs' franchises are located as "non-strategic" frustrates the purpose of the non-compete

provision in the Baskin-Robbins franchise agreements.

85.    In light of the defendants' designation of the areas in which the Group I, Group IV and Group V Plaintiffs' franchises are located as "non-strategic," the non-competition provision is no longer reasonable or rationally related to the defendants' interests.

86.    In light of the defendants' designation of the areas in which the Group I, Group IV and Group V Plaintiffs' franchises are located as "non-strategic," enforcement of the non-competition provision of the Baskin-Robbins franchise agreements is unreasonable, unconscionable, and against public policy.

87.    The Group I, Group IV and Group V Plaintiffs have no adequate remedy at law.

88.    By reason of the defendants' designation of the areas in which the Group I, Group IV and Group V Plaintiffs' franchises are located as "non-strategic," the Group I, Group IV and Group V Plaintiffs are entitled to an injunction prohibiting the defendants from enforcing the non-competition provisions in the franchise agreements.

## COUNT TEN

### Breach of Fiduciary Duty- Group V Plaintiffs

89.    Plaintiffs reallege and incorporate herein by reference each and every previous allegation of this Complaint, as if fully rewritten herein.

90.    The defendants' conduct in the continued unconscionable actions regarding the withholding of information material to the course of business between the Group V Plaintiffs and the defendants under the aforementioned franchise agreement constituted a breach of trust and confidence actionable under Mississippi law due to the fiduciary relationship that developed between the defendants and the Group V Plaintiffs over their course of dealings.

26

91.     By reason of the defendants' breach of said fiduciary duty, the Group V Plaintiffs each suffered damages in an amount to be determined at trial but in excess of $75,000.00.

## COUNT ELEVEN

### Violation of the Robinson-Patman Act, 15 U.S.C. Sec. 13(a) - Group I, Group IV, and Group V Plaintiffs

92.     Plaintiffs reallege and incorporate herein by reference each and every previous allegation of this Complaint, as if fully rewritten herein.

93.     It is reasonably possible that selling the same products to the franchisees who accept either the Franchise Royalty Conversion Offer or the Limited Franchise Royalty Conversion Offer at lower prices than the prices at which the products are sold to franchisees who do not accept either the Franchise Royalty Conversion Offer or the Limited Franchise Royalty Conversion Offer will harm the franchisees who do not accept one of the offers and will harm competition within Texas, Louisiana, and Mississippi, the relevant geographic markets.

94.     Selling products to the franchisees who accept either the Franchise Royalty Conversion Offer or the Limited Franchise Royalty Conversion Offer at lower prices than the prices at which the same products are sold to franchisees who do not accept one of the offers constitutes illegal secondary-line price discrimination in violation of the Robinson-Patman Act, 15 U.S.C. § 13(a) and threatens loss or damage to those franchisees who do not accept one of the two offers made on November 18, 1999.

95.     Unless enjoined from doing so, defendants will impose the system of illegal secondary-line price discrimination on or about December 15, 1999.

96.     Plaintiffs have no adequate remedy at law.

97.     By reason of the defendants threat of conduct forbidden by 15 U.S.C. § 13(a), all Plaintiffs are entitled to injunctive relief pursuant to 15 U.S.C. § 26 to prevent serious anti-competitive harm.

## COUNT TWELVE

### Punitive Damages

98.     Plaintiffs reallege and incorporate herein by reference each and every previous allegation of this Complaint, as if fully rewritten herein.

99.     The conduct of the defendants was willful, wanton, reckless and unconscionable taken with the utter disregard for the interests of all Plaintiffs.

100.     By reason of the conduct of the defendants as alleged herein, Plaintiffs are entitled to recover punitive damages in the amount of $40 million.

**WHEREFORE**, Plaintiffs demand judgment as follows:

1.     An Order authorizing each Group II Plaintiff to rescind their franchise agreements and transactions with the defendants and receive a refund of their investment moneys.

2.     An Order enjoining the defendants from providing discounted prices unavailable to each Group I, Group IV and Group V Plaintiff to any franchisees who accept either the Franchise Royalty Conversion Offer or the Limited Franchise Royalty Conversion Offer.

3.     An Order granting each Group I Plaintiff additional and treble damages for the economic damages and mental anguish caused by the defendants' knowing violation of the Texas Deceptive Trade

Practices and Consumer Protection Act.

4.  An Order granting each Group IV Plaintiff additional compensatory damages for the actual damages suffered as a result of the defendants' violation of the Louisiana Unfair Trade Practices and Consumer Protection Act.

5.  An Order granting each Group V Plaintiff additional damages for losses suffered as a result of the defendants' breach of fiduciary duty.

6.  An Order Enjoining the defendants from enforcing the non-compete provisions contained in the Baskin and Robbins Franchisee Agreements against the Group I, Group IV and Group V Plaintiffs.

7.  An Order granting each Group III Plaintiff compensatory damages in excess of $75,000.00 for damages suffered as a result of the defendants' intentional interference with contract.

8.  An Order that Plaintiffs be awarded out of any recovery herein all expenses, costs and disbursements incident to the prosecution of this action, including reasonable attorney, expert and accountants' fees.

9.  An Order granting Plaintiffs punitive damages in the amount of $40,000,000.00 for Plaintiffs.

10. And for such other or further relief to which the Court finds Plaintiffs are entitled.

Respectfully submitted,

E. BEN FRANKS
Texas State Bar No. 07384500
LAW OFFICES OF E. BEN FRANKS
8 Woodmont Crossing
Texarkana, Texas 75503
(903) 792-3215 Telephone
(903) 792-4531 Telecopier

WILLIAM F. MAGEE
LAW OFFICES OF WILLIAM F. MAGEE
110 E. 3rd Street
Lewisville, Arkansas  71845-1025
(870) 921-4249 Telephone
(870) 921-4503 Telecopier

THOMAS D. ROBENALT
(Ohio Reg. No. 0055960)
RUBENSTEIN, NOVAK, EINBUND &
          PAVLIK
Skylight Office Tower
1660 West Second St., Suite 270
Cleveland, OH  44113-1498
(216) 781-8700 Telephone
(216) 781-9227 Telecopier

JAMES F. KOEHLER,
Ohio Reg. No. 0007904)
DENNIS G. REHOR
(Ohio Reg. No. 0063684)
JANICE AITKEN
(Ohio Reg. No. 0067114)
GALLAGHER, SHARP, FULTON &
          NORMAN
Seventh Floor - Bulkley Building
1501 Euclid Avenue
Cleveland, OH  44115
(216) 241-5310  Telephone
(216) 241-1608  Telecopier

**ATTORNEYS FOR PLAINTIFFS**